UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**03-60195**

**CIV-MARRA**

Case No. _____-Civ

WHITNEY INFORMATION NETWORK, INC.,
a Florida Corporation, and RUSS WHITNEY,
an individual,

        Plaintiffs,

v.

JOHN T. REED, an individual,

        Defendant.

**MAGISTRATE JUDGE
SELTZER**

NIGHT BOX
FILED

FEB 12 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B)

BY DEFENDANT

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant John T. Reed hereby removes to this Court the

state court action described below:

1.On January 29, 2003, a complainte entitled WHITNEY INFORMATION NETWORK,

INC., a Florida corporation, and RUSS WHITNEY an individual, Plaintiffs, vs. JOHN T. REED,

an individual, Defendant, as case number CACE 03-01788(21) was filed  in the Circuit Court of

the 17th Judicial District Circuit, in and for Broward County, Florida (Exhibit A). On or around

February 5, 2003, an EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND

INCORPORATED MEMORANDUM OF LAW, was filed in that same court. A copy of the

EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED

MEMORANDUM OF LAW is attached hereto as Exhibit B.

2. The first date upon which Defendant John T. Reed received a copy of said motion and

memorandum was February 10, 2003 when Defendant was served a copy of the said motion and

1



memorandum by first class mail from Christina M. Kitterman. The first date upon which Defendant John T. Reed received a copy of said complaint was February 12, 2003 when Defendant was served a copy of the said complaint by a process server.

3. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332, and is one which may be removed to the Court by Defendant pursuant to the provisions of 28 U.S.C. 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because the size of Plaintiffs' businesses and the harm claimed are both so great that an award of less than $75,000 would be "...outside the range of permissible awards..." if Plaintiffs prevailed in all claims. [Burns v. Windsor Insurance Co. (11th Cir. 1994) 31 F 3d 1092]

Plaintiff Whitney Information Network, Inc. claims in filings with the Securities and Exchange Commission to have annual income of $42,157,740 for the calendar year 2001 (Exhibit C). If previous growth trends continue, their sales would be significantly greater than that in 2002 and 2003. Plaintiffs claim in their motion and memorandum (page 2) that Defendant's behavior "...has resulted in, and continues to result in, substantial harm to Plaintiffs." On pages 3 and 4 of their motion and memorandum, Plaintiffs claim that they "...have lost and continue to lose, substantial profits" and that "many" of Plaintiff's prospective and existing customers have either refrained from purchasing Plaintiffs' services or ceased to continue utilizing Plaintiffs' products and services. Plaintiffs further state on page 4 of their motion and memorandum that Plaintiffs' reputation has been harmed and their goodwill has been severely damaged. On page 7 of the motion and complaint, Plaintiffs state they are "...consistently losing an immeasurable number of customers and an undeterminable amount of money due to..."Defendant's actions. On page 9, they complain of losing "...countless consumers..."

In addition, Plaintiff Russ Whitney claims in S.E.C. filings (Exhibit D) that he has numerous additional business interests not part of Whitney Information Network, Inc. and Plaintiffs' allegations of various harm suffered by them clearly apply to those additional interests, thereby

making the amount from which income is allegedly being subtracted greater than the $42,157,740 that Whitney Information Network, Inc. grossed in 2001. $75,000 is a mere .0018 of the 2001 sales of Whitney Information Network, Inc., and an even smaller percentage of the income of both Plaintiffs combined. It is inconceivable that the harm described in such dire terms in the emergency motion could only affect businesses the size of Plaintiffs' by such a small ratio.

4. Defendant is informed and believes that Plaintiff Russ Whitney was, and still is, a citizen of Cape Coral, Florida. Defendant is informed and believes that Plaintiff Whitney Information Network, Inc. had, and still has, its principal place of business in Cape Coral, Florida and is incorporated in the State of Colorado, notwithstanding the contrary caption on Plaintiffs' motion and memorandum. Defendant John T. Reed was at the time of receiving this motion and memorandum, and still is, a citizen of Alamo, California and is the only defendant that has been mailed the motion and memorandum in this action.

5. Most of the wording of the Broward County complaint is copied verbatim from a complaint (Case No. 2:02-cv-288-FtM-29DNF) filed by these same plaintiffs against this same defendant on June 25, 2002 in the U.S. District Court for the Middle District of Florida in Fort Myers, Florida, a city which is adjacent the principal place of business of Plaintiffs in Cape Coral, Florida. One change made to the motion and memorandum filed in Broward County was dropping the federal Lanham Act claim which Plaintiffs cited in the Fort Myers complaint as giving that court jurisdiction. The almost identical complaint filed in the U.S. District Court for the Middle District of Florida in Fort Myers is attached as Exhibit E. That litigation is still active.

February 12, 2003

Date

John T. Reed, *pro se* Defendant
John T. Reed Publishing
342 Bryan Drive, Alamo, CA 94507
925-820-6292, Fax: 925-820-1259
johnreed@johntreed.com

3

IN THE CIRCUIT COURT OF THE
17TH JUDUCIAL CIRCUIT IN AND
FOR BROWARD COUNTY,
FLORIDA

WHITNEY INFORMATION NETWORK, INC.,
a Florida corporation, and RUSS WHITNEY,
an individual,

CASE NO.    0301788

           Plaintiffs,

vs.

JOHN T. REED, an individual,

JAN 29 2003

           Defendant.
_____/

## COMPLAINT

Plaintiffs, Whitney Information Network, Inc. and Russ Whitney, by and through their undersigned attorneys, sue Defendant, John T. Reed, and allege:

### JURISDICTION AND VENUE

1.    Venue is proper because, upon information and belief, a substantial part of the events giving rise to the claims asserted herein occurred in Broward County, Florida.

2.    This is an action for injunction and monetary damages in excess of fifteen thousand dollars ($15,000) exclusive of interest, attorneys' fees and costs.

### THE PARTIES

3.    Plaintiff, Whitney Information Network, Inc. ("WIN"), is a corporation duly organized under the laws of the State of Florida and does business in Broward County, Florida.

4.    Plaintiff, Russ Whitney ("Whitney"), in an individual residing in Lee County, Florida.



ATTACHMENT / EXHIBIT _____

5.      Defendant, John T. Reed, upon information and belief, is a citizen of the state of California.

## GENERAL ALLEGATIONS

6.      Plaintiffs are amongst the market leaders in providing educational and training services in the fields of real estate, finance, the Internet, mortgage and certifications.

7.      As a means to promote their services, Plaintiffs created Internet web sites as a means to enable prospective students to learn about these programs, and to provide a conduit for prospective student to learn about and register for these educational and training services as well as to purchase educational materials created by and distributed by Plaintiffs.

8.      Defendant operates a web site under the domain name www.johntreed.com ("Defendant's Web Site") for commercial gain.  Defendant offers and sells products on his web site which directly compete with those of Plaintiffs.  Defendant's Web Site is available and has been visited by persons, in Florida, throughout the United States and the world.

9.      On or about January 14, 2002, Plaintiffs became aware that Defendant was using Plaintiffs' service mark and personal name in the embedded code of his Web Site for the purpose of, amongst other things, diverting "hits" and attention of Internet users away from Plaintiffs' site who were searching for Plaintiffs' goods and services.  A web site's embedded code is invisible to the human reader but visible to search engines that direct the user to a list of web sites resulting from the "search term" inquiry entered by the user.

10.      Defendant, through his web site and by use of Plaintiffs' service mark and personal name in his Web Site's embedded code, has diverted Internet traffic from Plaintiffs' web site, as those who seek Plaintiffs' web site are directed to the Web Site of Defendant.  Such

diversion has resulted in, and continues to result in, substantial harm to Plaintiffs in Broward County, Florida.

11.    Plaintiffs are the owners of statutory rights, in addition to common law rights, for "RUSS WHITNEY" and "WHITNEY" in connection with educational and training services in the fields of real estate, finance, Internet, and certifications.

12.    For many years prior to the acts of Defendant complained of herein, Plaintiffs have achieved wide-spread and substantial sales of their services and products designated by the Marks "RUSS WHITNEY" and "WHITNEY" in commerce.

13.    The Marks are and have been so widely used by Plaintiffs and others to identify Plaintiffs' services and products that said services and products are now, and because long prior to the acts of Defendant complained of herein, generally known among the trade and the public by the "RUSS WHITNEY" and "WHITNEY" marks.

14.    By virtue of long and continuous use by Plaintiffs, and since long prior to the acts of Defendant complained of herein, the Marks have developed a secondary meaning and significance, and have been readily recognizable by the public and the trade as a designation associated with Plaintiffs.

15.    The Marks are now, and since long before the acts of Defendant complained of herein, associated in the public mind exclusively with Plaintiffs and their services and products. The Marks have come to identify Plaintiffs' services and products and to distinguish said services and products from those of others.

16.    Despite Plaintiffs' adoption and use of the Marks in commerce, Defendant's Web Site has used Plaintiffs' Marks and Plaintiff Whitney's personal name in Defendant's Web Site, and in embedded code associated with Defendant's Web Site, for the purpose of diverting

3

Internet traffic away from Plaintiffs' web sites, and in an effort to direct traffic toward a web site operated by Defendant.

17.     This intentional diversion of Internet traffic results in individuals seeking to locate Plaintiffs' information, products and services to be directed to Defendant's information, products and services.  As a result, Plaintiffs have lost and continue to lose substantial profits.

18.     Defendant's web site contains disparaging, scandalous and libelous remarks regarding Plaintiffs and the services and products provided by Plaintiffs.  The Defendant's Web Site has stated that Plaintiffs are disreputable, and that Plaintiffs conduct activities, which are tantamount to "threats, coercion and scams," and that Plaintiff Russ Whitney "will be arrested and do hard time in the future … he is a true crook at heart."   The text of the libelous statement is attached as Exhibit "A."  Additionally, Defendant's web site contains other false, misleading and derogatory materials about Plaintiff Russ Whitney.

19.     Defendant improperly uses Plaintiffs' Marks and asserts the aforementioned disparaging, scandalous and libelous statements in an effort to operate a web site for commercial gain, in that many of Plaintiffs' prospective students who access Defendant's web site and view this scandalous information, refrain from purchasing Plaintiffs' services, notwithstanding a clear intent to do so prior to accessing the web site.   As a result, instead of purchasing Plaintiffs' products and services, the prospective students refrain from conducting business with Plaintiffs and/or purchase Defendant's products and services offered on Defendant's web site, which directly compete with those of Plaintiffs.

20.     Additionally, as a result of Defendant's actions, certain of Plaintiffs' existing customers and students have ceased to continue utilizing Plaintiffs' products and services; this is

4

as a direct result of these individuals accessing Defendant's web site and viewing the aforesaid libelous material.

21.   Plaintiff Russ Whitney is not affiliated, connected, or associated with Defendant, nor has either Plaintiff sponsored or approved of Defendant's use of the Marks.

22.   The Defendant has misappropriated the goodwill associated with Plaintiffs' Marks for his own use and for his own illegal financial benefit.

23.   Defendant's use of the Marks on closely related products and services is likely to cause confusion and a false association between Plaintiffs' products and services and the products and services offered by Defendant, falsely leading consumers to believe that they emanate from the same source.

24.   Defendant's use in commerce of the Marks is likely to cause confusion, and initial interest confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendant's products and services, and to cause them to mistakenly believe that Defendant's products are the products of Plaintiffs, or are sponsored, licensed, authorized or approved by Plaintiffs, all to the detriment of Plaintiffs, the trade, and the public.

25.   Defendant's aforesaid acts have harmed Plaintiffs' reputation, severely damaged Plaintiffs' goodwill, and have diverted sales from Plaintiffs.

<div align="center">

**COUNT I**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**

</div>

Plaintiff realleges and reavers paragraphs 1 through 25 as if fully set forth herein.

26.   Defendant, REED, is aware that Plaintiffs had advantageous business relationships with their prospective and existing students and customers.

27.     REED intentionally, without justification and with malice, interfered with Plaintiffs' business relationships with existing and prospective students and customer suppliers, as set forth in paragraphs 16, 17, 18 and 19 above.

28.     As a direct and proximate result of REED's tortious interference, Plaintiffs have been damaged including, but not limited to, loss of significant profits and loss of goodwill.

WHEREFORE, Plaintiffs demand judgment against Defendant, REED, for damages, including the damages set forth in paragraph 28 supra, court costs and for such other and further relief as this Court deems just and proper. Further, Plaintiffs demand trial by jury of all issues so triable as a matter of right.

Dated this _____ day of January, 2003.

ROTHSTEIN, ROSENFELDT,
DOLIN & PANCIER, P.A.
Attorneys for Plaintiffs
300 Las Olas Place, Suite 860
300 SE Second Street
Fort Lauderdale, FL 33301
Telephone:     (954) 522-3456
Facsimile:     (954) 527-8663

By: _____
SCOTT W. ROTHSTEIN, Esq.
FBN: 765880
CHRISTINA M. KITTERMAN, Esq.
FBN: 595381

There is also an email about Warr ~~~der the Stefanchik heading above.

**The Wealth Institute—I do not recommend**
This company has sent me some stuff, but I have not yet had a chance to read it. This guru-rating page is a free service. So, it is not my top priority. The company name triggers item #20 on my Real Estate B.S. Artist Detection Checklist. They also use the name foreclosures.com. As you can see above, there are three other companies with similar names. The Wealth Institute, says, "We are NOT affiliated with any other company (other than... Daily Default Infoservice, Foreclosure Forecast, The Wealth Institute, or Foreclosures.com)." Before subscribing to Daily Default Infoservice, try the legal newspaper that covers the geographical are you are interested in. The legal newspaper may give equal, better, or adequate information for a lower price.

**Wealth Investment Network (P.O. Box 49683, Colorado Springs, CO 80949)—I do not recommend**
I do not like the name of this organization. The good gurus generally do not choose such names. See my Real Estate B.S. Artist Detection Check List for a discussion of how bad gurus reveal themselves by such things as emphasizing the benefits of wealth rather than real-estate information. Their Web site entry pages are chock a block full of words and phrases that I see over and over in material put out by sleazy gurus.

Some of the articles at this site were written by guys I recommend. Many were written by guys I give a neutral recommendation to. In other words, the authors are generally not as into get-rich-quick hype as the site owners. The home page has a picture of a treasure chest overflowing with gold and jewels.

**Stephen Weeks—unknown**
Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

**Fred Weinkauf—unknown**
Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

**Whitney, Russ™—I do not recommend—If I had numerical ratings, I would give him a lower rating than any other guru**
I understand this guy pushes going into the bi-monthly mortgage counseling business. Reader Robert Hagler told me that in his opinion Whitney's™ book *Building Wealth* was 'more motivational than how-to.' That guru behavior pattern, promising real estate, but delivering motivation, is one which I cited in my Real Estate B.S. Artist Detection Check List.

Another reader says one Whitney™ idea is to start a property-management firm for extra income and great leads. That's a dumb idea. Running a property-management company is extremely time-consuming and not very lucrative. Property-management companies are also lawsuit magnets. You will spend your whole life giving depositions and you will lose most of the cases. I used to work for a property-management company. I never got any leads, let alone any "great" ones. Also property managers have a fiduciary relationship and duty to their clients. Profiting from the relationship above and beyond the agreed-upon property-management fee would be a questionable behavior pattern and might be illegal.

On 11/13/99, I received an email from Tim and Faye Ashberry somewhere in Arkansas saying they were very happy with Whitney's™ course.

On 3/9/01, a visitor to my site said I am currently on CRE online in a debate about Russ Whitney™. For the record, I have not posted any message on CRE online in 2001. If there are message there purporting to be from me, they are written by imposters.

Reader comments on Whitney™

Here are a couple of emails I recently exchanged with a reader.

**6/30/01**
"Some years back (probably about 1988) I went to a Russ Whitney Seminar, and got swept along in the "heat of the moment" and was fleeced for $15,000 by Mr. Whitney. Many other people at the seminar were fleeced as well. We bought worthless real-estate software, much of which didn't even work. It was actually available as free shareware at the time he was selling it. I knew something was wrong when I received the computer system from his company (a small, cheap Macintosh) and the delivery person made me pay for the freight. This was after giving Russ Whitney a check for $15,000 - he makes me pay for a $70 delivery fee. Real classy guy. The basic thing I bought was the rights to be a "Bi-Weekly Mortgage" Agent for his company. Not only did this turn out to be a very hard sell to the average homeowner (I think I sold two after trying dozens of leads), but right after selling this program to seminar attendees for $15,000 he turned around and offered the same deal as a magazine offer for $59.95. You didn't get a computer, but the computer was probably worth no more than $500. Several people from that era of seminars went on to sue him, and I will forever cringe when I hear this man's name - he used to call me on the phone as well, and try to bully me when I objected to his magazine deal for $59.95. The only thing that gives me some relief is that I know he will be arrested and do hardtime in the future.... all this will catch up with him.... he is a true crook at heart and vile little man." David Keith

**7/1/01**
"He says he is going to sue me on 7/6/01 if I do not remove all mention of him from my Web site. May I quote you?"



EXHIBIT

John T. Reed

**7/1/01**

"Yes, by all means quote me. Russ Whitney threatens everyone—I spoke via email with another person who has sort of a rating system of Real Estate teachers, and he gave Russ Whitney bad remarks also (who wouldn't?), and said Russ had threatened to sue him as well. Mr. Whitney is at the bottom of the food chain for real estate teachers—all of his business is through threats, coercion, and scams. I don't think there's any basis for law suits when people are expressing opinions, and when there is evidence to support those opinions. This is America. Screw him." **David Keith**

If Mr. Keith's comment about Whitney™ threatening people is true, he would appear to be a bully in addition to the other things that have been reported. The only way to deal with bullies is to stand up to them. If you have been threatened by Whitney™ or know of someone who has, I would like to hear from you. Please email me at johnreed@johntreed.com.

No one has yet told me that Whitney™ is stupid. If he files a lawsuit against any of his critics—thereby forcing himself to produce documents, answer questions under oath, and provide potential witness lists under penalty of perjury or contempt—I will add stupidity to my list of reasons why I do not recommend him.

Here is an email John T .Reed received on 7/5/01:

I have some bones to pick with Mr. Whitney as well. I was told repeatedly in the one seminar I attended that "Russ Whitney Cares About You"! Then I was offered more training at extreme prices and told if I didn't sign up that day the price would double. So I declined. I hate hard sales. I also bought into the Mortgage Reduction Deal and leased a credit card machine. Now they are charging me for things I never ordered and was told I would not get or pay for. This is a major headache and I no longer have any respect for the name of Russ Whitney.
I work for a seminar logistics firm, we set up training seminars and do any type of work involved with making the seminar happen. I know what it costs to produce a seminar and I can tell you that Mr. Whitney is not getting rich off Real Estate, he is getting rich off the innocent, trusting people that he cares so much about.
tperson@visto.com

As a result of the many reports I have received about Whitney™, and the various threats from his attorney, I have decided to do an article about him for my newsletter, Real Estate Investor's Monthly. I will excerpt it here after I publish it. If you have any information about Russ Whitney™, pelase contact me.

Here is an email John T. Reed received on 11/12/01

"I saw this post at Creative Real Estate On-line and thought you might be interested:

**"Russ Whitney Discussion BANNED Here Under Threat of Lawsuit**

As a result of threats by Russ Whitney to sue CRE Online, Terry Vaughan, J.P. Vaughan and our employees, for allowing discussions about him here on our "Infomercial Guru Forum," we are forced to ban any and all further discussion about Russ Whitney, his seminars or his organization.
Here is part of the actual verbatim email Russ Whitney sent to Terry Vaughan today (September 27, 2001):

[The following is apparently an email from Whitney to Vaughn] Terry, I have been gentlemanly and patient with you. You obviously are not a man of your word. If that is not true then I will see ALL POSTS regarding me and my company immediatley removed from your site AND YOUR ARCHIVES. Terry, if that is not done immediatley, starting TODAY, prepare to spend some money. I will institute a lawsuit against Creonline, you and all Creonline employees. I will also sue every poster on your board that has slandered my good name, in FEDERAL COURT on Monday morning. Count on it! Monday morning. Federal Court. Win or lose, you WILL be spend money from here on out for the illegal and slanderous use of my name.

[The following is apparently th eVaughn reaction to the Whitney threat] Our attorneys have advised us that truth is an "absolute" defense to a defamamtion lawsuit, the Courts are not very fond of "prior restraints," and that it is highly unlikely that a "public figure" like Russ Whitney would prevail in such a lawsuit. However, we are a small company, and we simply cannot afford a protracted legal battle with a big, powerful organization like the Russ Whitney Company. Please respect our wishes and refrain from discussing Russ Whitney here. Thank you.
Sincerely, Terry and J.P. Vaughan

For another Web site that does allow discussions of Whitney, go to
http://www.PaperSourceOnline.com/discus/messages/1649/3159.html.

**I.G. Williams a.k.a. Ione Young Gray—I do not recommend**
L.A. foreclosure guru convicted on two counts of using a false social security number to obtain more than $600,000 in federally-related mortgages. Sentenced to 18 months in prison. A visitor to this site added the following: Her Bar Number was #74419; suspension date was 4-29-97. Conviction was for violation of 18 USC 1014, Felony, false Social Security number on a loan application, and for 42 USC 408 (a) (7) (b). He said she was not a saint, but that the government 's prosecution was questionable. He did not say why. I asked him that and why she used an alias in her seminar business.

**Richard Wood—Murdered**

Wood was a paper (seller mortgages) ... milar guru. He reportedly persuaded his seminar ... dents to give him $4 to $6 million to invest in second mortga... ...stead, he used some of it to pay phony retur...s t... er investors. Using the principal of early investors to pa... ...y returns to them and later investors is call... Ponzi Scheme after Charles Ponzi, the first to receive great publicity ... ...sing the scheme. Wood reportedly put the re... .f the investor's money into his own accounts—offshore. When he avoided investors or told them unbelivable stories explaining why he could not give them their money back, they forced him into involuntary bankruptcy. He stopped making payments on his $500,000 Las Vegas mortgage and was presumably about to flee the country when he was shot dead in front of his house.

**Lance Young—Unknown**
Probate guy. Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

Please tell me of your experiences with real estate gurus so I can share them with my Web site visitors. Thanks.

Good luck,

John T. Reed, a.k.a. John Reed, Jack Reed, 342 Bryan Drive, Alamo, CA 94507, Voice: 925-820-7262, Fax: 925-820-1259, Email: johnreed@johntreed.com

**Real estate investment books | Real estate investment page**

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE 03-01788 (21)

WHITNEY INFORMATION
NETWORK, INC., a Florida
corporation, and RUSS WHITNEY
an individual,

      Plaintiffs,

vs.

JOHN T. REED, an individual,

      Defendant.

_____/

## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, WHITNEY INFORMATION NETWORK, INC. and RUSS WHITNEY, ("WHITNEY"), move this Court for an emergency preliminary injunction enjoining the Defendant, JOHN T. REED ("REED"), his agents, servants, employees and attorneys, and those persons in active concert or participation with him from operating the web site known as "www.johntreed.com." In support of this motion, Plaintiffs state as follows:

### FACTUAL BASIS FOR GRANTING EMERGENCY INJUNCTIVE RELIEF

This is an action based on the Defendant's blatant and malicious tortious interference with the advantageous business relationships of Plaintiffs. Plaintiffs are amongst the market leaders in providing educational and training services in the fields of real estate, finance, the Internet, mortgage and certifications. As a means to promote their services, Plaintiffs created Internet web sites to enable prospective students to learn about their programs, and to provide a conduit for prospective students to learn about and register for their educational and training services as well as to purchase educational


ATTACHMENT / EXHIBIT

materials created by and distributed by Plaintiffs.  Defendant operates a web site under the domain name www.johntreed.com ("Defendant's Web site") for commercial gain.  Defendant offers and sells products on his web site which directly compete with those of Plaintiffs.  Defendant's web site is available and has been visited by persons, in Florida, throughout the United States and the world.

On or about January 14, 2002, Plaintiffs became aware that Defendant was using Plaintiffs' marks and personal name in the embedded code of his web site for the purpose of, amongst other things, diverting "hits" and attention of Internet users away from Plaintiffs' site who were searching for Plaintiffs' goods and services.  A web site's embedded code is invisible to the human reader but visible to search engines that direct the user to a list of web sites resulting from the "search term" inquiry needed by the user.  Defendant, through his web site and by use of Plaintiffs' service mark and personal name in his web site's embedded code, has diverted Internet traffic from Plaintiffs' web site.  Internet users conducting a name search using the name "Russ Whitney" are directed via the search results to Defendant's web site, www.johntreed.com.  Such diversion has resulted in, and continues to result in, substantial harm to Plaintiffs in Broward County, Florida.

Plaintiffs are the owners of statutory rights, in addition to common law rights, for "RUSS WHITNEY" and "WHITNEY" in connection with educational and training services in the fields of real estate, finance, internet and certifications.  By virtue of long and continuous use by Plaintiffs, and since long prior to the acts of Defendant complained of herein, the Marks have developed a secondary meaning and significance, and have been readily recognizable by the pubic and the trade as a designation associated with Plaintiffs.  The Marks are now, and since long prior to the acts of Defendant complained of herein, associated in the public mind exclusively with Plaintiffs and their

- 2 -

services and products.   The Marks have come to identify Plaintiffs' services and products and to distinguish said services and products from those of others.

Despite Plaintiffs' adoption and use of the Marks in commerce, Defendant's web site has used Plaintiffs' Marks and Plaintiff, WHITNEY's, personal name in Defendant's web site, and in embedded code associated with Defendant's web site, for the purpose of diverting Internet traffic away from Plaintiffs' web sites, and in an effort to direct traffic toward a web site operated by Defendant.   This intentional diversion of Internet traffic constitutes unlawful tortious interference and results in individuals seeking to locate Plaintiffs' information, products and services to be directed to Defendant's information, products and services.   As a result, Plaintiffs have lost, and continue to lose, substantial profits.

Additionally, Defendant's web site contains disparaging, scandalous and libelous remarks regarding Plaintiffs and the services and products provided by Plaintiffs aiding Defendant in diverting consumers from Plaintiffs to Defendant.   The Defendant's web site has stated that Plaintiffs are disreputable, and that Plaintiffs conduct activities which are tantamount to "threats, coercion and scams," and that Plaintiff, RUSS WHITNEY, "will be arrested and do hard time in the future ... he is a true crook at heart."   Defendant's web site contains other false, misleading and derogatory materials about Plaintiff, RUSS WHITNEY, further aiding Defendant in tortiously interfering with Plaintiffs' business.

Defendant improperly uses Plaintiffs' Marks and asserts the aforementioned disparaging, scandalous and libelous statements in an effort to operate a web site for commercial gain; many of Plaintiffs' prospective students who access Defendant's web site and view this scandalous information, refrain from purchasing Plaintiffs' services, notwithstanding a clear intent to do so prior to accessing

- 3 -

    e.  Defendant is, without authorization, using Plaintiffs' names to illegally profit from Plaintiffs' reputation and goodwill; and

    f.  Defendant is profiting by confusing and deceiving the public by casting Plaintiffs in a false light.

Unless enjoined, Defendant will continue to utilize Plaintiffs' names for his own illegal benefit. In support of this motion, Plaintiffs respectfully submit the following matters for review and consideration: (1) Plaintiffs will suffer irreparable harm unless the injunction issues; (2) Plaintiffs have no adequate remedy at law; (3) There is a substantial likelihood that Plaintiffs will prevail on the merits of its claims; and (4) The injunction, if issued, would not be adverse to the public interest. Immediate and irreparable injury, loss and damage will result to Plaintiffs by reason of Defendant's continued unlawful actions. Plaintiffs have no adequate remedy at law.

## MEMORANDUM OF LAW

### I.    STANDARD FOR PRELIMINARY INJUNCTION

A preliminary injunction is proper where irreparable harm will result unless the status quo is maintained, where a party has a clear legal right to the relief and no adequate remedy at law. Chicago Title Insurance Agency of Lee County, Inc. v. Chicago Title Insurance Co., 560 So. 2d 296 (Fla. 2d DCA 1990). In order to prevail on a motion for preliminary injunction, Plaintiffs must establish 1) the likelihood of irreparable harm if the injunction is not granted; 2) the unavailability of an adequate remedy at law; 3) a substantial likelihood of success on the merits; and 4) consideration of the public interest. City of Dania Beach v. Konschnik, 763 So. 2d 555, 556 (Fla. 4th DCA 2000); Islandia Condominium Association Inc. v. Vermut, 438 So. 2d 89 (Fla. 4th DCA 1983).

- 5 -

    e.  Defendant is, without authorization, using Plaintiffs' names to illegally profit from Plaintiffs' reputation and goodwill; and

    f.  Defendant is profiting by confusing and deceiving the public by casting Plaintiffs in a false light.

Unless enjoined, Defendant will continue to utilize Plaintiffs' names for his own illegal benefit. In support of this motion, Plaintiffs respectfully submit the following matters for review and consideration: (1) Plaintiffs will suffer irreparable harm unless the injunction issues; (2) Plaintiffs have no adequate remedy at law; (3) There is a substantial likelihood that Plaintiffs will prevail on the merits of its claims; and (4) The injunction, if issued, would not be adverse to the public interest. Immediate and irreparable injury, loss and damage will result to Plaintiffs by reason of Defendant's continued unlawful actions. Plaintiffs have no adequate remedy at law.

## MEMORANDUM OF LAW

### I.   STANDARD FOR PRELIMINARY INJUNCTION

A preliminary injunction is proper where irreparable harm will result unless the status quo is maintained, where a party has a clear legal right to the relief and no adequate remedy at law. <u>Chicago Title Insurance Agency of Lee County, Inc. v. Chicago Title Insurance Co.</u>, 560 So. 2d 296 (Fla. 2d DCA 1990). In order to prevail on a motion for preliminary injunction, Plaintiffs must establish 1) the likelihood of irreparable harm if the injunction is not granted; 2) the unavailability of an adequate remedy at law; 3) a substantial likelihood of success on the merits; and 4) consideration of the public interest. <u>City of Dania Beach v. Konschnik</u>, 763 So. 2d 555, 556 (Fla. 4th DCA 2000); <u>Islandia Condominium Association Inc. v. Vermut</u>, 438 So. 2d 89 (Fla. 4th DCA 1983).

## II.   PLAINTIFFS HAVE SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Defendant has Tortiously Interfered with Plaintiffs' Advantageous Business Relationships

Defendant has violated Plaintiffs' clear legal right to the exclusive use of Plaintiffs names, and Plaintiffs' clear legal right to profit from the goodwill and business reputation Plaintiffs have developed in recognition of such names.  As more fully set forth in the Factual Basis for Granting Emergency Injunctive Relief, Defendant has illegally embedded codes in his Internet web site whereby any person searching for Plaintiffs' web site is directed to Defendant's web site instead of Plaintiffs'. Furthermore, Defendant has flooded his web site with Plaintiffs' names, which not only hinders Internet users from finding Plaintiffs' web site when they conduct a name search using a search engine, but moreover, diverts such users to Defendant's web site.  Simply, a user conducting a name search using the name "Russ Whitney" is directed via the search results to Defendant's web site, www.johntreed.com.  Through these unlawful uses of Plaintiffs' names, Defendant is diverting Internet users away from Plaintiffs' web site and directing them to Defendant's web site.

Once the Internet user is at Defendant's web site the user is inundated with overwhelming disparaging, scandalous and libelous remarks regarding Plaintiff, RUSS WHITNEY, and the products and services provided by Plaintiffs.   Defendant then offers his competing products and services for sale.   Clearly, Defendant has, and continues to, tortiously interfere with Plaintiffs' advantageous business relationships and must be enjoined from causing any further irreparable harm to Plaintiffs.  In light of all the above, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim against Defendant.

- 6 -

## III.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM UNLESS A PRELIMINARY INJUNCTION IS ENTERED

Plaintiffs can clearly make a showing of irreparable harm due to Defendant's illegal conduct. Plaintiffs are consistently losing an immeasurable number of customers and an undeterminable amount of money due to Defendant's use of Plaintiffs' names and illegal diversion of Internet traffic. Each day Defendant is able to, and does in fact, divert Internet traffic and tortiously interfere with Plaintiffs' business, countless numbers of customers are lost. Tracking such loss with any degree of accuracy is completely impossible. Plaintiffs and consumers alike are harmed. Due to Defendant's actions, irreparable harm is present and an injunction must be entered.

The consequences of Defendant's actions and the resulting loss of goodwill and reputation are intangible damages that cannot later be compensated adequately by an award of money damages, thus constituting irreparable harm necessitating an injunction. Cle-Ware Rayco, Inc. v. Perlstein, 401 F.Supp. 1231, 1234 (S.D. N.Y. 1975); *See generally* Tiffany Sands, Inc., v. Mezhibovsky, 463 So. 2d 349 (Fla. 3d DCA 1985). Additionally, Plaintiffs' goodwill and business reputation are being constantly harmed by disparaging, scandalous and libelous remarks on Defendant's web site. Defendant has made statements such as: "[Whitney] is a flake," "[Whitney] was a bumbling incompetent for the most part initially. This option is an example of his incompetence," and "...he was a **24-carat phony** who had very little money and was merely **pretending** to be a big financial success for all these years." Moreover, Defendant has misconstrued Plaintiff's, WHITNEY's, statements and publicly stated that Plaintiffs are guilty of felonious activities, wherein Defendant relentlessly warns Internet users that Plaintiffs have defrauded lenders, committed tax fraud and violated numerous federal laws. Defendant's endless, false attack on Plaintiffs and their business

- 7 -

practices is resulting in irreparable harm to Plaintiffs' goodwill and reputation, whereby an injunction is the only available remedy.

Furthermore, Plaintiffs will suffer irreparable harm due to the fact that they will likely never know the true number of customers and potential customers that are being unlawfully diverted away from Plaintiffs' web site to Defendant's web site. Irreparable harm of this nature requires the issuance of a preliminary injunction. U.S. 1 Office Corp. v. Falls Home Furnishings, Inc., 655 So. 2d 209, 210 (Fla. 3d DCA 1995). It is impossible to ascertain the amount of Internet users Defendant is diverting away from Plaintiffs' web site. Defendant's incessant use of Plaintiffs' names in both the embedded coding and on his web site continues to result in the diversion of users every day. Until Defendant is enjoined from committing such diversion, Plaintiffs will continue to suffer an insurmountable amount of damages requiring an injunction to stop the irreparable harm.

## IV.    PLAINTIFFS HAVE NO ADEQUATE REMEDY AT LAW

As outlined above, Plaintiffs have no adequate remedy at law against Defendant for the undeterminable loss Plaintiffs have suffered, and continue to suffer, as a result of Defendants illegal use of Plaintiffs' names and diversion of its customers and potential customers. Moreover, Defendant is causing irreparable harm to Plaintiffs' goodwill and business reputation for which there is no adequate remedy at law. Tiffany Sands, Inc., 463 So. 2d at 351.

Plaintiffs' continued loss of profits, as well as the damage to their reputation and goodwill clearly outweighs the harm that may be caused by enjoining Defendant from tortiously interfering with Plaintiffs' business relationships. Courts have found that a preliminary injunction was merited if "the probable loss of consumer goodwill for [Plaintiffs] outweighs the costs of delay that [Defendant] will incur in not being able to sell [its products] until a decision on the merits." Davidoff & CIE v. PLD

International Corp., 263 F.3d 1297, 1304 (11th Cir. 2001). In the present case, Plaintiffs have shown more than just a "probable loss of consumer goodwill." The threatened injuries to Plaintiffs goodwill, business and reputation outweigh any harm an injunction will cause Defendant, thus allowing and necessitating this Court to enjoin Defendant's actions.

## V.    GRANTING THE INJUNCTION WILL NOT DISSERVE PUBLIC INTEREST

It is axiomatic that "the public interest is served by preventing consumer confusion in the marketplace." Id. at 1304; SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 263 F.3d 1297, 1304 (11th Cir. 1996). The tort of tortious interference with an advantageous business relationship was implemented, in part, to protect both business owners and consumers alike from harm by preventing unscrupulous individuals from misleading consumers into doing business with one business over another through illegal means. Here, the Defendant has misappropriated Plaintiffs' names and through this misappropriation, along with the use of Meta tags and the like, has caused countless consumers to be directed away from Plaintiffs' business to Defendant's business. By enjoining Defendant's actions, this Court can help prevent consumer confusion in the marketplace. Chase Medical Group v. Palmetto Clinic Center, 549 So.2d 1111, 1112 (Fla. 3d DCA 1989).

Defendant's activities are clearly tarnishing Plaintiffs' reputation and goodwill by illegally diverting Internet traffic and by defaming Plaintiffs. "When a mark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the mark owner to control his products' reputation. The public interest in this case would be served by the entry of an injunction which would immediately prevent further confusion of customers from occurring." Sundor Brands, Inc. v. Borden, Inc., 653 F.Supp. 86, 93 (M.D. Fla. 1986); *See also* Tortoise Island Association, Inc. v. Tortoise Island Realty, Inc., 790 So. 2d 525, 534 (Fla. 5th DCA

2001).   Defendant's actions have caused confusion among consumers and public interest would be best served by an entry of this injunction.

## CONCLUSION

For all the reasons set herein, Plaintiffs' Emergency Motion for the Entry of Preliminary Injunction should be **GRANTED.**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by mail, this 5th day of February, 2003, to:   John T. Reed, **Defendant Pro Se**, 342 Bryan Drive, Alamo, California 94507.

ROTHSTEIN, ROSENFELDT, DOLIN & PANCIER, P.A.
**Attorneys for Plaintiff**
300 Las Olas Place, Suite 860
300 S.E. 2nd Street
Ft. Lauderdale, Florida 33301
TEL:  (954) 522-3456
FAX:  (954) 527-8663

By: _____
Scott W. Rothstein, Esq.
Florida Bar No.: 765880
Christina M. Kitterman, Esq.
Florida Bar No.: 595381

- 10 -

## Liabilities and Stockholders' Deficit

| | | |
|---|---:|---:|
| **Current liabilities** | | |
| Accounts payable | $ 1,152,337 | $ 1,942,804 |
| Accrued seminar expenses | 435,360 | 349,341 |
| Deferred revenue | 23,937,349 | 22,640,442 |
| Accrued expenses | 702,548 | 458,982 |
| Current portion of long-term debt | 62,500 | - |
| Current portion of note payable- officer/stockholder | 62,500 | - |
| Total current liabilities | 26,352,594 | 25,391,569 |
| Long-term debt, less current portion | 512,500 | 1,200,000 |
| Note payable- officer/stockholder, less current portion | 62,500 | - |
| Total liabilities | 26,927,594 | 26,591,569 |
| **Commitments and contingencies** | | |
| **Stockholders' deficit** | | |
| Preferred stock, no par value, 10,000,000 shares authorized, no shares issued and outstanding | - | - |
| Common stock, no par value, 25,000,000 shares authorized, issued and outstanding shares 7,878,023 (2001) and 7,528,022 (2000) | 337,102 | 67,102 |
| Paid-in capital | 900 | 900 |
| Accumulated deficit | (10,720,727) | (13,004,974) |
| Total stockholders' deficit | (10,382,725) | (12,936,972) |
| Total liabilities and stockholders' deficit | $ 16,544,869 | $ 13,654,597 |

See notes to consolidated financial statements.

## WHITNEY INFORMATION NETWORK, INC. AND SUBSIDIARIES

### Consolidated Statements of Income

| | For the Years Ended December 31, | | |
|---|---:|---:|---:|
| | 2001 | 2000 | 1999 |
| **Sales** | $ 42,157,740 | $ 32,859,857 | $ 26,775,589 |
| **Expenses** | | | |
| Seminar expenses | 19,533,802 | 22,232,387 | 11,529,312 |
| Advertising and sales expense | 12,044,713 | 12,529,615 | 12,708,275 |
| General and administrative expense | 8,297,862 | 7,058,318 | 4,500,268 |
| Total expenses | 39,876,377 | 41,820,320 | 28,737,855 |
| Income (loss) from operations | 2,281,363 | (8,960,463) | (1,962,266) |
| **Other income (expense)** | | | |
| Interest and other income | 356,989 | 267,344 | - |
| Interest expense | (104,105) | (10,008) | - |
| | 252,884 | 257,336 | - |
| Net income (loss) | $ 2,534,247 | $ (8,703,127) | $ (1,962,266) |
| Basic and diluted weighted average common shares outstanding | 7,587,474 | 7,528,022 | 7,502,346 |
| Basic and diluted income (loss) per common share | $ 0.33 | $ (1.16) | $ (0.26) |

**ATTACHMENT / EXHIBIT** *C*

Security Ownership of Certain Beneficial Owners and Management

The following table sets forth certain information with respect to the ownership of the Company's Common Stock as of the date of this Report, by (i) each person who is known by the Company to own of record or beneficially more than 5% of the Company's Common Stock, (ii) each of the Company's directors and (iii) all directors and officers of the Company as a group. Unless otherwise indicated, the stockholders listed in the table have sole voting and investment powers with respect to the shares of Common Stock and their addresses are in care of the Company. Shareholdings include shares held by family members and shares issuable under stock options exercisable within 60 days from the date hereof.

| Name | Number of Shares Beneficially Owned | Percentage of Class |
| ---- | ------------------- | -------- |
| Russell A. Whitney | 6,742,150 | 85.6% |
| Richard W. Brevoort | 415,150 | 5.3% |
| Ronald S. Simon | 328,175 | 4.2% |
| All directors and officers as a group (three persons) | 7,485,475 | 95.0% |

### ELECTION OF DIRECTORS

At the Annual Meeting, the shareholders will elect three directors of the Company. Cumulative voting is not permitted in the election of directors. In the absence of instructions to the contrary, the person named in the accompanying proxy will vote in favor of the election of each of the persons named below as the Company's nominees for directors of the Company. All of the nominees are presently members of the Board of Directors. Each of the nominees has consented to be named herein and to serve if elected. It is not anticipated that any nominee will become unable or unwilling to accept nomination or election, but if such should occur, the person named in the proxy intends to vote for the election in his stead of such person as the Board of Directors of the Company may recommend.

The following table sets forth certain information regarding each director nominee and each executive officer of the Company. References to the "Company" in this information include the operations of (i) the Company's predecessor and wholly-owned subsidiary, Whitney Education Group, Inc. and (ii) the Company's eight other wholly-owned subsidiaries

| Name | Age | Position | Officer/Director Since |
| ----- | --- | -------- | ---------------------- |
| Russell A. Whitney | 46 | Chairman of the Board of Directors and Chief Executive Officer | 1998 |
| Richard W. Brevoort | 64 | President and Director | 1998 |
| Ronald S. Simon | 59 | Executive Vice President, Chief Financial Officer, Secretary and Director | 1998 |

Directors are elected at the Company's annual meeting of shareholders and serve a term of one year or until their successors are elected and qualified. Officers are appointed by the Board of Directors and serve at the discretion of the Board of Directors, subject to the bylaws of the Company.

The principal occupation of each director nominee and executive officer of the Company, for at least the past five years, is as follows:

Russell A. Whitney founded the Company and has been its Chief Executive Officer since 1987. He is also President of each of the Company's wholly-owned subsidiaries. Mr. Whitney is an executive officer of a number of privately held Florida-based companies which are engaged in real estate development, publishing, marketing, software development and mortgage services. Mr. Whitney nevertheless devotes substantially all of his time to the Company's affairs.

Richard W. Brevoort has been employed by the Company since February 1991 and became President and a director of the Company in August 1998. From 1984 to 1991 he was President of the Hudson Agency, a New York City-based marketing company.

Ronald S. Simon has been a Certified Public Accountant since 1971. He has been Secretary, Chief Financial Officer and a director of the Company since August 1998 and was appointed its Executive Vice President in May 2002. He is also an executive officer of a number of the Company's wholly-owned subsidiaries. Mr. Simon earned a Bachelor of Science degree in accounting from the University of Illinois.

3

ATTACHMENT / EXHIBIT _____

RECEIVED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

C2 JUN 25 PM 1:35

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS. FLORIDA

WHITNEY INFORMATION NETWORK, INC.,
a Florida corporation, and RUSS WHITNEY,
an individual,

Plaintiffs,

v.

JOHN T. REED, an individual,

Defendant.

_____/

**INJUNCTIVE RELIEF SOUGHT**

CASE NO. 2:02- CV- 288- FtM-29DNF

## COMPLAINT

Plaintiffs, Whitney Information Network, Inc. and Russ Whitney, by and through their

undersigned attorneys, sue Defendant, John T. Reed, and allege:

### JURISDICTION AND VENUE

1.      This is an action for injunctive and other relief under the Federal Trademark Act, 15

U.S.C. § 1051, et seq. ("Lanham Act"), particularly 15 U.S.C. §1125, for trademark infringement,

false designation of origin, false description or representation, and related unfair competition.

Plaintiffs also assert claims under the common law of trademark infringement, unfair competition,

and, pursuant to 28 U. S.C. § 1332(a) and this Court's pendant jurisdiction, an action for libel and

trade libel.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332,

1338(a), and 1338(b).  This Court also has jurisdiction pursuant to 15 U.S.C. § 1121, and the

doctrine of pendant jurisdiction.

ATTACHMENT / EXHIBIT _____

3.      Venue is proper under 28 U.S.C. § 1391(b) because, upon information and belief, (a) a substantial part of the events giving rise to the claims asserted herein occurred and (b) a substantial part of the property that is the subject of this action is situated, in the Middle District of Florida.

## THE PARTIES

4.      Plaintiff, Whitney Information Network, Inc. ("WIN"), is a corporation duly organized under the laws of the State of Florida with its principal place of business in Lee County, Florida.

5.      Plaintiff, Russ Whitney ("Whitney"), is an individual residing in Lee County, Florida.

6.      Defendant, John T. Reed, upon information and belief, is a citizen of the state of California and is otherwise sui juris.

## GENERAL ALLEGATIONS

7.      Plaintiffs are amongst the market leaders in providing educational and training services in the fields of real estate, finance, the Internet, mortgage and certifications.

8.      Defendant operates a web site under the domain name www.johntreed.com ("Defendant's Web Site") for commercial gain. Defendant offers and sells products on his website which directly compete with those of Plaintiffs. Defendant's Web Site is available and has been visited by persons, in Florida, throughout the United States and the world.

9.      On or around January 14, 2002, Plaintiffs became aware that Defendant was using Plaintiffs' service mark and personal name in the embedded code of his Web Site for the purpose of, amongst other things, diverting "hits" and attention of Internet users away from Plaintiffs' site who were searching for Plaintiffs' goods and services. A web site's embedded code is invisible to

2

the human reader but visible to search engines that direct the user to a list of web sites resulting from the "search term" inquiry entered by the user. A copy of a portion of the embedded code for Defendant's web site is attached as Exhibit "A".

10.    Defendant, through his web site and by use of Plaintiffs' service mark and personal name in his Web Site's embedded code, has diverted Internet traffic from Plaintiffs' web site, as those who seek Plaintiffs' web site are directed to the Web Site of Defendant. Such diversion has resulted in, and continues to result in, substantial harm to Plaintiffs in the Middle District of Florida.

## PLAINTIFFS' SERVICE MARKS

11.    At least as early as 1985 and long prior to the acts of Defendant complained of herein, Plaintiffs adopted and used in commerce the inherently distinctive designations and service marks "RUSS WHITNEY," and "WHITNEY" (hereinafter referred to as "Marks"), for and in connection with the sale of educational and training materials in the fields of real estate, finance, Internet and certifications. Such use has been continuous since that time.

12.    Plaintiffs are the owners of statutory rights, in addition to common law rights, for "RUSS WHITNEY" and "WHITNEY" in connection with educational and training services in the fields of real estate, finance, Internet, and certifications.

13.    Plaintiff WIN is the owner of pending service mark applications in the United States Patent and Trademark Office, Serial Nos. 76/179948 and 75/889257, for the marks "RUSS WHITNEY" and "WHITNEY," respectively.

3

14.    Since long prior to the acts of Defendant complained of herein, Plaintiffs have achieved wide-spread and substantial sales of their services and products designated by the Marks "RUSS WHITNEY" and "WHITNEY" in commerce.

15.    The Marks are and have been so widely used by Plaintiffs and others to identify Plaintiffs' services and products that said services and products are now, and became long prior to the acts of Defendant complained of herein, generally known among the trade and the public by the "RUSS WHITNEY" and "WHITNEY" marks.

16.    By virtue of long and continuous use by Plaintiffs, and since long prior to the acts of Defendant complained of herein, the Marks have developed a secondary meaning and significance, and have been readily recognizable by the public and the trade as a designation associated with Plaintiffs.

17.    The Marks are now, and since long prior to the acts of Defendant complained of herein, have become associated in the public mind exclusively with Plaintiffs and their services and products. The Marks have come to identify Plaintiffs' services and products and to distinguish said services and products from those of others.

## DEFENDANT'S ACTIVITIES

18.    Long subsequent to Plaintiffs' adoption and use of the Marks in commerce, Defendant's Web Site has used Plaintiffs' Marks and Plaintiff Whitney's personal name in Defendant's Web Site, and in embedded code associated with Defendant's Web Site, for the purpose of diverting Internet traffic away from Plaintiffs' web sites, and in an effort to direct traffic toward a web site operated by Defendant.

4

19.     The Defendant's attempts to increase the numerical ranking of his web site when an Internet user enters "RUSS WHITNEY" in a search engine have been successful. For instance, on January 21, 2002, entering the search term "RUSS WHITNEY" in the "Google" search engine produced 1,330 matches. The Google search results are attached as Exhibit "B". Defendant's website ranked fifth out of these matches. See id.

20.     Defendant's web site contains disparaging and libelous remarks regarding the Plaintiffs and the services and products provided by Plaintiffs. The Defendant's Web Site has stated that Plaintiffs are disreputable, and that Plaintiffs conduct activities which are tantamount to "threats, coercion and scams", and that Plaintiff Russ Whitney "will be arrested and do hard time in the future... he is a true crook at heart." The text of the libelous statement is attached as Exhibit "C".

21.     The Defendant's use of Plaintiff's Marks and libelous statements are made in the context of operating a web site for commercial gain. Products and services which directly compete with those of Plaintiffs are offered on Defendant's Web Site

22.     Plaintiffs have never permitted nor licensed Defendant to use Plaintiffs' Marks.

23.     Plaintiff Whitney is not affiliated, connected, or associated with Defendant, nor has either Plaintiff, sponsored or approved of Defendant's use of the Marks.

24.     The Defendant has misappropriated the goodwill associated with Plaintiffs' Marks for his own use.

25.     Defendant's use of the Marks on closely related products and services is likely to cause confusion and a false association between Plaintiffs' products and services and the products and services offered by Defendant, falsely leading consumers to believe that they emanate from the same source.

5

26.     Defendant's use in commerce of the Marks is likely to cause confusion, and initial interest confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendant's products and services, and to cause them to mistakenly believe that Defendant's products are the products of Plaintiffs, or are sponsored, licensed, authorized or approved by Plaintiffs, all to the detriment of Plaintiffs, the trade, and the public.

27.     Defendant's aforesaid acts have harmed Plaintiffs' reputation, severely damaged Plaintiffs' goodwill and upon information and belief, have diverted sales from Plaintiffs.

28.     Defendant's aforesaid acts have caused and will cause great and irreparable injury to Plaintiffs, and, unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

29.     Plaintiffs have no adequate remedy at law.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT

30.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 29 as if fully set forth herein.

31.     With full knowledge and awareness of Plaintiffs' ownership and prior use of the "RUSS WHITNEY" and "WHITNEY" Marks, Defendant has intentionally used in commerce, and, upon information and belief, will continue to intentionally use the Marks, which use is likely to cause confusion, or to cause mistake, or to deceive consumers and the public at large.

33.     Defendants' aforesaid acts constitute infringement of Plaintiffs' rights in violation of §43 of the Lanham Act, 15 U.S.C. §1125, and, upon information and belief, Defendant's use of the Marks is intentional and wilful.

34.     Plaintiffs have no adequate remedy at law.

6

## COUNT II - FALSE DESIGNATION, DESCRIPTION,
## AND REPRESENTATION UNDER THE LANHAM ACT

35.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 29 as if fully set forth herein.

36.     Defendant has intentionally used, and, upon information and belief, will continue to use in commerce the Marks, which use constitutes false designation(s) of origin, false or misleading description(s) of fact, or false or misleading representation(s) of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection or association with Plaintiffs, or as to origin, sponsorship, or approval of Defendant's products or services by Plaintiffs.

37.     Defendant's aforesaid acts constitute unfair competition, false designation of origin, and/or false description or representation in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

38.     Plaintiffs have no adequate remedy at law.

## COUNT III - COMMON LAW TRADEMARK AND SERVICE MARKS
## INFRINGEMENT

39.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 29 as if fully set forth herein.

40.     Defendant's aforesaid acts constitute false designation(s) of origin, false or misleading description(s) of fact, or false or misleading representation(s) of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiffs, or as to origin, sponsorship, or approval of Defendant's products and services by Plaintiffs.

41.     Plaintiffs have no adequate remedy at law.

7

## COUNT IV - UNFAIR COMPETITION

42.　　Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 29 as if fully set forth herein.

43.　　Defendant's aforesaid acts constitute infringement, misappropriation, and misuse of Plaintiffs' Marks, unfair competition, palming-off and passing-off against Plaintiffs, and unjust enrichment of Defendant, all in violation of Plaintiffs' rights at common law.

44.　　Defendant's aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiffs, and, unless restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

45.　　Plaintiffs have no adequate remedy at law.

WHEREFORE, as to Counts I - IV, Plaintiffs respectfully pray:

a.　　That this Court will adjudge that the trade and service marks "RUSS WHITNEY" and "WHITNEY" have been infringed as a direct and proximate result of the acts of Defendant as set forth in this Complaint, in violation of Plaintiffs' rights under the Lanham Act, 15 U.S.C. §1051 et seq., and the common law, and that such infringement amounts to wilful use by Defendant of Plaintiffs' marks.

b.　　That this Court will adjudge that Defendant has competed unfairly with Plaintiffs as set forth in this Complaint, in violation of Plaintiffs' rights under the Lanham Act, 15 U.S.C. §1125(a), and the common law.

c.　　That Defendant, and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be preliminarily and permanently enjoined and restrained:

8

1)      From using the accused trade and service marks "RUSS WHITNEY" and "WHITNEY" or any other designation, service mark, or trademark similar to Plaintiffs' marks complained of herein, in any way, including in connection with educational and training services in the fields of real estate, finance, Internet, mortgage, and certifications, or any similar goods or services;

2)      From preparing, manufacturing, linking, publishing, or otherwise acquiring or using any goods or services that utilize either the "RUSS WHITNEY" or the "WHITNEY" marks, and doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Plaintiffs' and Defendant's services, or their respective products;

3)      From all further sales and commercial dealings that utilize the "RUSS WHITNEY" and "WHITNEY" marks, or any colorable imitation.

d.      That Defendant be required to delete and remove any embedded code from Defendant's web site containing any of Plaintiffs' marks, and that in any way refer to Plaintiffs, or divert Internet traffic away from web sites actually sponsored, affiliated, approved of, or controlled by Plaintiffs.

e.      That Defendant be directed to remove from any computer files, web sites, archives, bulletin boards, and the like, any references to Russ Whitney and/or the "RUSS WHITNEY" and "WHITNEY" marks.

f.      That Defendant be directed to file with this Court and to serve upon Plaintiffs within thirty (30) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of Defendant's compliance.

9

g.      That Plaintiffs recover Defendant's profits and damages arising from Defendant's acts of trademark infringement, false designation of origin, false description or representation, unfair competition, defamation and libel.

h.      That the Court treble such damages as awarded in accordance with paragraph g.

I.      That Plaintiffs recover, in addition to such sums as otherwise awarded, punitive damages in an amount that the Court deems just and proper.

j.      That Plaintiffs recover pre-judgment and post-judgment interest on each and every award.

k.      That Plaintiffs recover their reasonable attorney fees incurred in this action, and that this is an exceptional case pursuant to 15 U.S.C §1117.

l.      That Plaintiffs have and recover their taxable costs and disbursements incurred in this action.

m.      That Plaintiffs have other and such further relief as the Court may deem just and proper.

## COUNT V - LIBEL

46.      Plaintiffs re-allege and re-aver the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

47.      Plaintiff Whitney is an individual who has had a good name, credit, reputation, and standing in the business community.

48.      Defendant, at all times germane, knew of the good name, credit, and reputation of Plaintiff, Whitney.

10

49.     Defendant, through his Internet Web Site, discredits Plaintiff Whitney's business reputation by alleging illegal business practices. A copy of the relevant portion of the Internet Web Site is attached hereto as Exhibit "C". Defendant's allegations are false.

50.     Plaintiffs have complied with the notice requirements of Florida Statute § 770.01.

51.     Defendant has stated, in his Web Site, that the conduct of Plaintiff Whitney is deceitful, dishonest, and illegal, and that this same business conduct will result in Whitney's imprisonment. The Defendant further stated that Whitney is a "crook" and that Whitney conducts business through threats, coercion and scams. Such comments are false and constitute libel per se.

52.     The reasonable implication from the statements of Defendant is that Plaintiff Whitney's business practices are illegal and fraudulent, and that Plaintiff Whitney is disreputable, likely to be imprisoned, and engages in criminal conduct.

53.     Furthermore, Defendant made these false statements of fact while diverting commercial Internet traffic away from Plaintiffs' website by using Plaintiffs' marks in the embedded code of his website.

54.     All of the foregoing defamatory and libelous statements concerning the Plaintiff are false, constitute libel per se, and impute conduct, characteristics, or a condition incompatible with the proper exercise of and which disparage Plaintiffs' regulation and lawful business, trade or profession.

55.     Upon information and belief, the foregoing false statements were made by Defendant with actual malice, that is, with knowledge of the falsity of the statements or with reckless disregard for the truth of the statements.

56.     As a direct and proximate result of Defendant publishing these libelous statements against Plaintiffs, Plaintiffs have suffered damages.

57.     Plaintiffs reserve the right to seek punitive damages upon establishing the burden of proof as required under the law.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, including interest, costs, and attorney's fees, and any other relief this Court deems appropriate.

## COUNT VI - TRADE LIBEL

58.     Plaintiffs re-allege and re-aver the allegations contained in paragraphs 1 through 29 above as though more fully set forth herein.

59.     Plaintiff WIN is a Florida corporation in good standing, with a good name and reputation in the business community.

60.     Plaintiff Whitney is employed by and associated with Plaintiff, WIN.

61.     Defendant knew of the good name, credit and reputation of Plaintiff WIN.

62.     Defendant, through his Internet Web Site, attempts to discredit Plaintiff's business reputation by alleging illegal business practices. See Exhibit "C".

63.     Plaintiffs have complied with the notice requirements of Florida Statute § 770.01.

64.     Defendant stated, on his Web Site, that the conduct of Plaintiff, WIN, is deceitful, dishonest, illegal, and that this same business conduct will result in Whitney's imprisonment. The Defendant further states that Whitney is a "crook" and that Whitney conducts business through threats, coercion and scams. Such comments are false and constitute libel per se.

12

65.     The reasonable implication from the statements of Defendant is that Plaintiff WIN's business practices are illegal, fraudulent, and that Plaintiff WIN is disreputable and engages in criminal conduct.

66.     Furthermore, Defendant, in addition to making these false statements of fact, also illegally directs Internet traffic from Plaintiffs' website to Defendant's Web Site through the use of embedded code containing Plaintiffs' marks.

70.     All of the foregoing defamatory and libelous statements concerning Plaintiff WIN are false and constitute libel per se and impute conduct, characteristics, or a condition incompatible with the proper exercise of and which disparages Plaintiffs' reputation and lawful business, trade or profession.

71.     Upon information and belief, the foregoing false statements were made by Defendant with actual malice, that is, with actual knowledge of, or reckless indifference to, the falsity thereof.

72.     As a direct and proximate result of Defendant publishing libelous statements against Plaintiffs, Plaintiffs have suffered damages, and Defendant has damaged Plaintiffs' business reputation in their trade, business or profession.

73.     Plaintiffs reserve the right to seek punitive damages upon establishing the burden of proof as required under the law.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, including interest, costs, and attorney's fees, and any other relief this Court deems appropriate.

## PLAINTIFF DEMANDS TRIAL BY JURY

Date: June 7, 2002

BRINKLEY, McNERNEY, MORGAN,
SOLOMON & TATUM, LLP
Counsel for Plaintiffs
200 East Las Olas Boulevard, Suite 1900
Fort Lauderdale, FL  33301
Telephone:     954-522-2200
Facsimile:     954-522-9123

By: _____
Louis R. Gigliotti
Florida Bar No. 71935

pages are chock a block full of words and phrases that I see over and over in material put out by sleazy gurus.</p>

        <p>Some of the articles at this site were written by guys I recommend. Many were written by guys I give a neutral recommendation to. In other words, the authors are generally not as into get-rich-quick hype as the site owners. The home page has a picture of a treasure chest overflowing with gold and jewels.</p>

        <p><a name="anchor542096"></a><b>Stephen Weeks---unknown</b><br>

        Use my <a href="BSchecklist.html">Real Estate B.S. Artist Detection Checklist</a> to evaluate this guru.</p>

        <p><a name="anchor826515"></a><b>Fred Weinkauf---unknown</b><br>

        Use my <a href="BSchecklist.html">Real Estate B.S. Artist Detection Checklist</a> to evaluate this guru.</p>

        <p><a name="anchor542319"></a><font color="red"><b>Whitney, Russ&#153;&#151;I do not recommend&#151;If I had numerical ratings, I would give him a lower rating than any aother guru</b></font><br>

        I understand this guy pushes going into the bi-monthly mortgage counseling business. Reader Robert Hagler told me that in his opinion Whitney's&#153; book <i>Building Wealth</i> was 'more motivational than how-to.' That guru behavior pattern, promising real estate, but delivering motivation, is one which I cited in my <a href="BSchecklist.html">Real Estate B.S. Artist Detection Check List</a>.</p>

        <p>Another reader says one Whitney&#153; idea is to start a property-management firm for extra income and great leads. That&#146;s a dumb idea. Running a property-management company is extremely time-consuming and not very lucrative. Property-management companies are also lawsuit magnets. You will spend your whole life giving depositions and you will lose most of the cases. I used to work for a property-management company. I never got <b>any</b> leads, let alone any &#147;great&#148; ones. Also property managers have a fiduciary relationship and duty to their clients. Profiting from the relationship above and beyond the agreed-upon property-management fee would be a questionable behavior pattern and might be illegal.</p>

        <p>On 11/13/99, I received an email from <a href="mailto:mtash@email.msn.com">Tim and Faye Ashberry somewhere in Arkansas</a> saying they were very happy with Whitney's&#153; course.</p>

        <p>On 3/9/01, a visitor to my site said I am currently on CRE online in a debate about Russ Whitney&#153;. For the record, I have not posted any message on CRE online in 2001. If there are message there purporting to be from me, they are written by imposters.</p>

        <p><a href="Whitneycomments.html">Reader comments on Whitney&#153;</a></p>

        <p>Here are a couple of emails I recently exchanged with a reader.</p>

        <p><b>6/30/01</b><br>

        &#147;Some years back (probably about 1988) I went to a Russ Whitney Seminar, and got swept along in the &quot;heat of the moment&quot; and was fleeced for $15,000 by Mr. Whitney. Many other people at the seminar were fleeced as well. We bought worthless real-estate software, much of which didn't even work. It was actually available as free shareware at the time he was selling it. I knew something was wrong when I received the computer system from his company (a small, cheap Macintosh) and the delivery person made me pay for the freight. This was after giving Russ Whitney a check for $15,000 - he makes me pay for a $70 delivery fee. Real classy guy. The basic thing I bought was the rights to be a &quot;Bi-Weekly Mortgage&quot; Agent for his company. Not only did this turn out to be a very hard sell to the

ATTACHMENT / EXHIBIT _A_

average homeowner (I think I sold two after trying dozens of leads), but right after selling this program to seminar attendees for $15,000 he turned around and offered the same deal as a magazine offer for $59.95. You didn't get a computer, but the computer was probably worth no more than $500. Several people from that era of seminars went on to sue him, and I will forever cringe when I hear this man's name - he used to call me on the phone as well, and try to bully me when I objected to his magazine deal for $59.95. The only thing that gives me some relief is that I know he will be arrested and do hardtime in the future.... all this will catch up with him.... he is a true crook at heart and vile little man.&#148; <a href="mailto:dkeith@totalaccess.net"><b>David Keith</b></a></p>

<p><b>7/1/01<br>
&#147;</b>He says he is going to sue me on 7/6/01 if I do not remove all mention of him from my Web site. May I quote you?&#148; <a href="mailto:johnreed@johntreed.com">John T. Reed</a></p>

<p><b>7/1/01</b><br>
&#147;Yes, by all means quote me. Russ Whitney threatens everyone&#151;I spoke via email with another person who has sort of a rating system of Real Estate teachers, and he gave Russ Whitney bad remarks also (who wouldn&#146;t?), and said Russ had threatened to sue him as well. Mr. Whitney is at the bottom of the food chain for real estate teachers&#151;all of his business is through threats, coercion, and scams. I don&#146;t think there&#146;s any basis for law suits when people are expressing opinions, and when there is evidence to support those opinions. This is America. Screw him.&#148; <a href="mailto:dkeith@totalaccess.net"><b>David Keith</b></a></p>

<p>If Mr. Keith&#146;s comment about Whitney&#153; threatening people is true, he would appear to be a <b>bully</b> in addition to the other things that have been reported. The only way to deal with bullies is to stand up to them. If you have been threatened by Whitney&#153; or know of someone who has, I would like to hear from you. Please email me at <a href="mailto:johnreed@johntreed.com">johnreed@johntreed.com</a>.</p>

<p>No one has yet told me that Whitney&#153; is <b>stupid</b>. If he files a lawsuit against any of his critics&#151;thereby forcing himself to produce documents, answer questions under oath, and provide potential witness lists under penalty of perjury or contempt&#151;I <b>will</b> add stupidity to my list of reasons why I do not recommend him.</p>

<p>Here is an email John T .Reed received on 7/5/01:</p>

<p>I have some bones to pick with Mr. Whitney as well. I was told repeatedly in the one seminar I attended that &quot;Russ Whitney Cares About You&quot;! Then I was offered more training at extreme prices and told if I didn&#146;t sign up that day the price would double. So I declined. I hate hard sales. I also bought into the Mortgage Reduction Deal and leased a credit card machine. Now they are charging me for things I never ordered and was told I would not get or pay for. This is a major headache and I no longer have any respect for the name of Russ Whitney.<br>
I work for a seminar logistics firm, we set up training seminars and do any type of work involved with making the seminar happen. I know what it costs to produce a seminar and I can tell you that Mr. Whitney is not getting rich off Real Estate, he is getting rich off the innocent, trusting people that he cares so much about.<br>
<a href='mailto:tperson@visto.com
About You"!   Then I was offered more training at extreme prices and told if I didnt sign up that day the price would double.  So I declined.  I hate hard sales.
I also bought into the Mortgage Reduction Deal and leased a credit card machine.  Now they are charging me for things I never

ordered and was told I would not get or pay for.  This is a major
headache and I no longer have any respect for the name of Russ
Whitney.



I work for a seminar logistics firm, we set up training seminars and do
any type of work involved with making the seminar happen.  I
know what it costs to produce a seminar and I can tell you that Mr.
Whitney is not getting rich off Real Estate, he is getting rich off the
innocent, trusting people that he cares so much about.
tperson@visto.com'>tperson@visto.com</a></p>
          <p>As a result of the many reports I have received about
Whitney&#153;, and the various threats from his attorney, I have decided
to do an article about him for my newsletter, <a href="REIM.html">Real
Estate Investor&#146;s Monthly</a>. I will excerpt it here after I
publish it. If you have any information about Russ Whitney&#153;, pelase
contact me.</p>
          <p>Here is an email John T. Reed received on 11/12/01</p>
          <p>&#147;I saw this post at Creative Real Estate On-line and
thought you might be interested:<br>
          <br>
          &#147;<font face="Arial Black" color="red">Russ Whitney
Discussion BANNED Here Under Threat of Lawsuit</font><br>
          <br>
          As a result of threats by Russ Whitney to sue CRE Online,
Terry Vaughan, J.P. Vaughan and our employees, for allowing discussions
about him here on our &quot;Infomercial Guru Forum,&quot; we are forced
to ban any and all further discussion about Russ Whitney, his seminars
or his organization.<br>
          Here is part of the actual verbatim email Russ Whitney sent
to Terry Vaughan today (September 27, 2001):<br>
          <br>
          [The following is apparently an email from Whitney to
Vaughn] Terry, I have been gentlemanly and patient with you. You
obviously are not a man of your word. If that is not true then I will
see ALL POSTS regarding me and my company immediatley removed from your
site AND YOUR ARCHIVES. Terry, if that is not done immediatley, starting
TODAY, prepare to spend some money. I will institute a lawsuit against
Creonline, you and all Creonline employees. I will also sue every poster
on your board that has slandered my good name, in FEDERAL COURT on
Monday morning. Count on it! Monday morning. Federal Court. Win or lose,
you WILL be spend money from here on out for the illegal and slanderous
use of my name.</p>
          <p>[The following is apparently th eVaughn reaction to the
Whitney threat] Our attorneys have advised us that truth is an
&quot;absolute&quot; defense to a defammation lawsuit, the Courts are
not very fond of &quot;prior restraints,&quot; and that it is highly
unlikely that a &quot;public figure&quot; like Russ Whitney would
prevail in such a lawsuit. However, we are a small company, and we
simply cannot afford a protracted legal battle with a big, powerful
organization like the Russ Whitney Company. Please respect our wishes
and refrain from discussing Russ Whitney here. Thank you.<br>
          Sincerely, Terry and J.P. Vaughan</p>
          <p>For another Web site that <b>does</b> allow discussions
of Whitney, go to <a
href="http://www.PaperSourceOnline.com/discus/messages/1649/3159.html">
http://www.PaperSourceOnline.com/discus/messages/1649/3159.html.</a></p>
          <p><a name="anchor542541"></a><font color="red"><b>I.G.
Williams a.k.a. Ione Young Gray---I do not recommend</b></font><br>
          L.A. foreclosure guru convicted on two counts of using a
false social security number to obtain more than $600,000 in federally-
related mortgages. Sentenced to 18 months in prison. A visitor to this
site added the following: Her Bar Number was #74419; suspension date was

4-29-97. Conviction was for violation of 18 USC 1014, Felony, false
Social Security number on a loan application, and for 42 USC 408 (a) (7)
(b). He said she was not a saint, but that the government &#146;s
prosecution was questionable. He did not say why. I asked him that and
why she used an alias in her seminar business.</p>
            <p><font color="red"><b>Richard Wood&#151;Murdered<br>
            </b></font>Wood was a paper (seller mortgages) seminar guru.
He reportedly persuaded his seminar students to give him $4 to $6
million to invest in second mortgages. Instead, he used some of it to
pay phony returns to later investors. Using the principal of early
investors to pay phony returns to them and later investors is called a
Ponzi Scheme after Charles Ponzi, the first to receive great publicity
for using the scheme. Wood reportedly put the rest of the investor&#
146;s money into his own accounts&#151;offshore. When he avoided
investors or told them unbelivable stories explaining why he could not
give them their money back, they forced him into involuntary bankruptcy.
He stopped making payments on his $500,000 Las Vegas mortgage and was
presumably about to flee the country when he was shot dead in front of
his house.</p>
            <p><a name="Anchor-Lance-49575"></a><b>Lance Young&#
151;Unknown</b><br>
            Probate guy. Use my <a href="BSchecklist.html">Real Estate
B.S. Artist Detection Checklist</a> to evaluate this guru.</p>
            <p>Please tell <a href="mailto:johnreed@johntreed.com">me
</a> of your experiences with real estate gurus so I can share them with
my Web site visitors. Thanks.</p>
            <p><font color="black">Good luck,</font></p>
            <p>John T. Reed, a.k.a. John Reed, Jack Reed, 342 Bryan
Drive, Alamo, CA 94507, Voice: 925-820-7262, Fax: 925-820-1259, Email:
<a href="mailto:johnreed@johntreed.com">johnreed@johntreed.com</a></p>
            <center>
                <p><a href="REIbooks.html"><b>Real estate investment
books</b></a><b> | <a href="realestate.html">Real estate investment page
</a></b></p>
            </center>
            <p> </p>
            <p> 
        </body>

</html>



"Russ Whitney"

**Web     Images     Groups     Directory**

Searched the web for **"Russ Whitney"**.                    Results **1 - 10** of about **1,330**. Search took **0.63** seconds.

RussWhitney.com Home Page
... Wealth Intelligence By **Russ Whitney**. ... Contact Us. Select Department... ...
www.russwhitney.com/ - 37k - 20 Jan 2002 - Cached - Similar pages

**Russ Whitney** Building Wealth Conference 2002! - Pre- ...
... Learn from the experts. **Russ Whitney** has personally selected the most exciting,
knowledgeable and financially successful speakers in the field of real estate ...
www.russwhitney.com/conference/flyer.htm - 10k - Cached - Similar pages
[ More results from www.russwhitney.com ]

**Russ Whitney**
... **Russ Whitney Russ Whitney** is vice president of research and development for ProClarity
and directs development of a software platform used to create custom ...
www.sqlmag.com/Articles/Index.cfm?AuthorID=486 - 49k - 20 Jan 2002 - Cached - Similar pages

Mastering Analysis
... January 2002 | **Russ Whitney** | SQL Server Magazine January MDX Puzzle Sort a set
in ascending order while making sure the parents appear after the children ...
www.sqlmag.com/Articles/Index.cfm?DepartmentID=737 - 48k - 20 Jan 2002 - Cached - Similar pages
[ More results from www.sqlmag.com ]

**Russ Whitney** Discussion Forum @ www.ezboard.com
... We will only be monitoring our new board....hope to see you there!!
ENTER OUR NEW COMMUNITY. **Russ Whitney** Discussion Forum. ...
pub21.ezboard.com/bwhitneydiscussionforum - 10k - Cached - Similar pages

Forums - **Russ Whitney**
... Buying Real Estate | **Russ Whitney** This forum is for discussion of real estate.
3 replies on 1 page. Most recent reply: 9 hours ago by kalvinm, ...
www.richdad.com/forums/thread.jsp?forum=31&thread=755 - 34k - Cached - Similar pages

Email from kevin Dean about **Russ Whitney** and Foreclosureworld
Email from Kevin Dean about **Russ Whitney** and Foreclosureworld Order form
| Real estate investment books | Real estate investment page ...
www.johntreed.com/Foreclosureworld.html - 10k - Cached - Similar pages

**Russ Whitney**
... Write for Security Administrator. **Russ Whitney Russ Whitney** is vice president of
research and development for ProClarity and directs development of a software ...
www.ntsecurity.net/Articles/Index.cfm?AuthorID=486 - 34k - Cached - Similar pages

Coming Soon...
... Coming soon: A comparative article about **Russ Whitney's**
product. 32 Year Old Ex-Hotel Employee Creates ...
www.infogurus.com/russ_whitney.html - 6k - Cached - Similar pages

Amazon.co.uk: At a glance: Building Wealth: From Rags to ...
... For example **Russ Whitney** gives some excellent advice about letting rooms in ones
own house if you need to make regular money in the short and medium term. My ...
www.amazon.co.uk/exec/obidos/search-handle-url/index=uk-books&field-author=Whitney,%20Russ/
ref=pd_sima_dp_1_3/ - 46k - Cached - Similar pages

# Gooooooooooogle ▶

ATTACHMENT / EXHIBIT ___ 

"Russ Whitney"                                    Search within results

Get the Google Toolbar:

**Unsatisfied with your results? Help us improve.**

**Try your query on: AltaVista Excite Lycos Yahoo!**

Google Home - Advertise with Us - Add Google to Your Site - News and Resources - Language Tools - Jobs, Press, Cool Stuff...

**©2002 Google**

There is also an email about Warren under the Stefanchik heading above.

**The Wealth Institute—I do not recommend**
This company has sent me some stuff, but I have not yet had a chance to read it. This guru-rating page is a free service. So, it is not my top priority. The company name triggers item #20 on my Real Estate B.S. Artist Detection Checklist. They also use the name foreclosures.com. As you can see above, there are three other companies with similar names. The Wealth Institute, says, "We are NOT affiliated with any other company (other than... Daily Default Infoservice, Foreclosure Forecast, The Wealth Institute, or Foreclosures.com)." Before subscribing to Daily Default Infoservice, try the legal newspaper that covers the geographical are you are interested in. The legal newspaper may give equal, better, or adequate information for a lower price.

**Wealth Investment Network (P.O. Box 49683, Colorado Springs, CO 80949)—I do not recommend**
I do not like the name of this organization. The good gurus generally do not choose such names. See my Real Estate B.S. Artist Detection Check List for a discussion of how bad gurus reveal themselves by such things as emphasizing the benefits of wealth rather than real-estate information. Their Web site entry pages are chock a block full of words and phrases that I see over and over in material put out by sleazy gurus.

Some of the articles at this site were written by guys I recommend. Many were written by guys I give a neutral recommendation to. In other words, the authors are generally not as into get-rich-quick hype as the site owners. The home page has a picture of a treasure chest overflowing with gold and jewels.

**Stephen Weeks—unknown**
Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

**Fred Weinkauf—unknown**
Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

**Whitney, Russ™—I do not recommend—If I had numerical ratings, I would give him a lower rating than any aother guru**
I understand this guy pushes going into the bi-monthly mortgage counseling business. Reader Robert Hagler told me that in his opinion Whitney's™ book *Building Wealth* was 'more motivational than how-to.' That guru behavior pattern, promising real estate, but delivering motivation, is one which I cited in my Real Estate B.S. Artist Detection Check List.

Another reader says one Whitney™ idea is to start a property-management firm for extra income and great leads. That's a dumb idea. Running a property-management company is extremely time-consuming and not very lucrative. Property-management companies are also lawsuit magnets. You will spend your whole life giving depositions and you will lose most of the cases. I used to work for a property-management company. I never got any leads, let alone any "great" ones. Also property managers have a fiduciary relationship and duty to their clients. Profiting from the relationship above and beyond the agreed-upon property-management fee would be a questionable behavior pattern and might be illegal.

On 11/13/99, I received an email from Tim and Faye Ashberry somewhere in Arkansas saying they were very happy with Whitney's™ course.

On 3/9/01, a visitor to my site said I am currently on CRE online in a debate about Russ Whitney™. For the record, I have not posted any message on CRE online in 2001. If there are message there purporting to be from me, they are written by imposters.

Reader comments on Whitney™

Here are a couple of emails I recently exchanged with a reader.

**6/30/01**
"Some years back (probably about 1988) I went to a Russ Whitney Seminar, and got swept along in the "heat of the moment" and was fleeced for $15,000 by Mr. Whitney. Many other people at the seminar were fleeced as well. We bought worthless real-estate software, much of which didn't even work. It was actually available as free shareware at the time he was selling it. I knew something was wrong when I received the computer system from his company (a small, cheap Macintosh) and the delivery person made me pay for the freight. This was after giving Russ Whitney a check for $15,000 - he makes me pay for a $70 delivery fee. Real classy guy. The basic thing I bought was the rights to be a "Bi-Weekly Mortgage" Agent for his company. Not only did this turn out to be a very hard sell to the average homeowner (I think I sold two after trying dozens of leads), but right after selling this program to seminar attendees for $15,000 he turned around and offered the same deal as a magazine offer for $59.95. You didn't get a computer, but the computer was probably worth no more than $500. Several people from that era of seminars went on to sue him, and I will forever cringe when I hear this man's name - he used to call me on the phone as well, and try to bully me when I objected to his magazine deal for $59.95. The only thing that gives me some relief is that I know he will be arrested and do hardtime in the future.... all this will catch up with him. He is a true crook at heart and vile little man." **David Keith**

**7/1/01**
"He says he is going to sue me on 7/6/01 if I do not remove all mention of him from my Web site. May I quote you?"

"Yes, by all means quote me. Russ Whitney threatens everyone—I spoke via email with another person who has sort of a rating system of Real Estate teachers, and he gave Russ Whitney bad remarks also (who wouldn't?), and said Russ had threatened to sue him as well. Mr. Whitney is at the bottom of the food chain for real estate teachers—all of his business is through threats, coercion, and scams. I don't think there's any basis for law suits when people are expressing opinions, and when there is evidence to support those opinions. This is America. Screw him." **David Keith**

If Mr. Keith's comment about Whitney™ threatening people is true, he would appear to be a **bully** in addition to the other things that have been reported. The only way to deal with bullies is to stand up to them. If you have been threatened by Whitney™ or know of someone who has, I would like to hear from you. Please email me at johnreed@johntreed.com.

No one has yet told me that Whitney™ is **stupid**. If he files a lawsuit against any of his critics—thereby forcing himself to produce documents, answer questions under oath, and provide potential witness lists under penalty of perjury or contempt—I will add stupidity to my list of reasons why I do not recommend him.

Here is an email John T .Reed received on 7/5/01:

I have some bones to pick with Mr. Whitney as well. I was told repeatedly in the one seminar I attended that "Russ Whitney Cares About You"! Then I was offered more training at extreme prices and told if I didn't sign up that day the price would double. So I declined. I hate hard sales. I also bought into the Mortgage Reduction Deal and leased a credit card machine. Now they are charging me for things I never ordered and was told I would not get or pay for. This is a major headache and I no longer have any respect for the name of Russ Whitney.
I work for a seminar logistics firm, we set up training seminars and do any type of work involved with making the seminar happen. I know what it costs to produce a seminar and I can tell you that Mr. Whitney is not getting rich off Real Estate, he is getting rich off the innocent, trusting people that he cares so much about.
tperson@visto.com

As a result of the many reports I have received about Whitney™, and the various threats from his attorney, I have decided to do an article about him for my newsletter, Real Estate Investor's Monthly. I will excerpt it here after I publish it. If you have any information about Russ Whitney™, pelase contact me.

Here is an email John T. Reed received on 11/12/01:

"I saw this post at Creative Real Estate On-line and thought you might be interested:

**"Russ Whitney Discussion BANNED Here Under Threat of Lawsuit**

As a result of threats by Russ Whitney to sue CRE Online, Terry Vaughan, J.P. Vaughan and our employees, for allowing discussions about him here on our "Infomercial Guru Forum," we are forced to ban any and all further discussion about Russ Whitney, his seminars or his organization.
Here is part of the actual verbatim email Russ Whitney sent to Terry Vaughan today (September 27, 2001):

[The following is apparently an email from Whitney to Vaughn] Terry, I have been gentlemanly and patient with you. You obviously are not a man of your word. If that is not true then I will see ALL POSTS regarding me and my company immediatley removed from your site AND YOUR ARCHIVES. Terry, if that is not done immediatley, starting TODAY, prepare to spend some money. I will institute a lawsuit against Creonline, you and all Creonline employees. I will also sue every poster on your board that has slandered my good name, in FEDERAL COURT on Monday morning. Count on it! Monday morning. Federal Court. Win or lose, you WILL be spend money from here on out for the illegal and slanderous use of my name.

[The following is apparently th e Vaughn reaction to the Whitney threat] Our attorneys have advised us that truth is an absolute "absolute" defense to a defammation lawsuit, the Courts are not very fond of "prior restraints," and that it is highly unlikely that a "public figure" like Russ Whitney would prevail in such a lawsuit. However, we are a small company, and we simply cannot afford a protracted legal battle with a big, powerful organization like the Russ Whitney Company. Please respect our wishes and refrain from discussing Russ Whitney here. Thank you.
Sincerely, Terry and J.P. Vaughan

For another Web site that **does** allow discussions of Whitney, go to
http://www.PaperSourceOnline.com/discus/messages/1649/3159.html.

I.G. Williams a.k.a. Ione Young Gray—I do not recommend
L.A. foreclosure guru convicted on two counts of using a false social security number to obtain more than $600,000 in federally-related mortgages. Sentenced to 18 months in prison. A visitor to this site added the following: Her Bar Number was #74419; suspension date was 4-29-97. Conviction was for violation of 18 USC 1014, Felony, false Social Security number on a loan application, and for 42 USC 408 (a) (7) (b). He said she was not a saint, but that the government 's prosecution was questionable. He did not say why. I asked him that and why she used an alias in her seminar business.

L. Richard Wood—Murdered documenting.html 1/14/02

Wood was a paper (seller mortgages) seminar guru. He reportedly persuaded his seminar students to give him $4 to $6 million to invest in second mortgages. Instead he used someone to pay phony returns to later investors. Using the principal of early investors to pay phony returns to them and later investors is called a Ponzi Scheme after Charles Ponzi, the first to receive great publicity for using the scheme. Wood reportedly put the rest of the investor's money into his own accounts—offshore. When he avoided investors or told them unbelivable stories explaining why he could not give them their money back, they forced him into involuntary bankruptcy. He stopped making payments on his $500,000 Las Vegas mortgage and was presumably about to flee the country when he was shot dead in front of his house.

**Lance Young—Unknown**
Probate guy. Use my Real Estate B.S. Artist Detection Checklist to evaluate this guru.

Please tell me of your experiences with real estate gurus so I can share them with my Web site visitors. Thanks.

Good luck,

John T. Reed, a.k.a. John Reed, Jack Reed, 342 Bryan Drive, Alamo, CA 94507, Voice: 925-820-7262, Fax: 925-820-1259, Email: johnreed@johntreed.com

**Real estate investment books | Real estate investment page**

03-60195

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Whitney Information Network, Inc.
Russ Whitney

**DEFENDANTS**
John T. Reed

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Lee, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Contra Costa, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

BKd 2-12-03 Broward 03cv 60195 MART / Dltn

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Christina M. Kitterman, Rothstein,
Rosenfeldt 300Las Olas Place #860, 300
S.E. 2nd Street, Fort Lauderdale, FL
33301 954-522-3456

ATTORNEYS (IF KNOWN)    Pro se

NIGHT BOX FILED

FEB 12 2003

CLARENCE MADDOX
CLERK U.S. DSDCT./S.D. FLA./ MIA

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☒ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS -Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 341 O
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 USC 1332 and 28 USC 1441(b) Plaintiffs sue for trademark and libel. Plaintiffs reside in Lee County, FL; Defendant in CA. Amount exceeds $75,000

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER FR.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ YES    ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE    John E. Steele

DOCKET NUMBER    2:02-cv-288-FtM-29DNF

DATE 2/11/03

SIGNATURE OF ATTORNEY OF RECORD
John T. Reed

FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

$150.00    877246
02/13/03